UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM R. YEE,

        Plaintiffs,        No. 06-CV-15142-DT

vs.        Hon. Gerald E. Rosen

MICHIGAN SUPREME COURT, et al.,

        Defendants.
_____/

MEMORANDUM OPINION AND ORDER GRANTING
ATTORNEY DEFENDANTS' MOTIONS TO DISMISS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     January 23, 2007

PRESENT:  Honorable Gerald E. Rosen
                   United States District Judge

## I. INTRODUCTION

On January 10, 2006, this Court entered an Opinion and Order dismissing the Judicial Defendants, Attorney General Defendants, County Prosecutor Defendants, Mediator Defendants, and Friend of the Court Defendants finding that all of these defendants are cloaked with absolute judicial and quasi-judicial immunity. This matter is now before the Court on the motions for dismissal filed by the "Attorney Defendants," Michael J. Guss and his law firm, Harvey Kruse, P.C.; J. Steven Johnston and Eric S. Goldstein, and their law firm, Bigler, Berry, Johnston, Sztykiel & Hunt, P.C.; Edward B.

1

Davison and his law firm, Gault Davison, P.C.; Thomas A. Connolly and Thomas A. Connolly, P.C.; Marcia Howe, Patrick A. Aseltyne and Jason D. Kolkema, and their law firm, Johnson, Rosati, LaBarge, Aseltyne & Field, P.C.; David Carbajal and Alan R. Sullivan.  These various attorneys and law firms represented the owners of parcels of property on Bambi Lake in Shiawassee County, Michigan who were sued by Plaintiff in 1995 in Michigan state court for conspiring to operate the spillway located at the southwest end of the lake in a manner which Yee claimed was calculated to maintain the lake at a level detrimental to his property.  *See Yee v. Shiawassee County Board of Commissioners*, 251 Mich. App. 379, 651 N.W. 2d 756 (2002), *lv. denied*, 468 Mich. 852 (2003) and *cert. denied*, 540 U.S. 1004 (2003).  Plaintiff has filed responses to the various Defendants' motions.

Having reviewed and considered Plaintiff's Complaint, Defendants' Motions and Plaintiff's Responses thereto, the Court has determined that oral argument is not necessary.  Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs.  This Opinion and Order sets forth the Court's ruling.

## II.  FACTUAL BACKGROUND[1]

---

[1] As Yee himself concedes in his Response Briefs, his claims against the Defendants in this action stem from state court litigation he was involved in -- and which resulted in rulings that were adverse to Yee's position -- concerning the water level of Bambi Lake.  For background purposes, the facts stated herein are taken, in part, from the Michigan Court of Appeals' decisions concerning Yee's state court litigation, *Yee v. Shiawassee County Board of Commissioners, et al.,* 251 Mich. App. 379 (2002), *lv. denied*, 468 Mich. 852 (2003) and *cert. denied*, 540 U.S. 1004 (2003), and *In re Lake Level for Bambi Lake, Shiawassee County*, 2004 WL 2169037 (Mich. App. 2004), *lv.*

Plaintiff William Yee owns a home on Bambi Lake, in Shiawassee County, Michigan. In 1995, Yee brought suit against other owners of property surrounding the lake claiming that these other property owners had conspired to operate the spillway at the southwest end of the lake in a manner calculated to maintain Bambi Lake at an elevated level that was detrimental to his property.[2] Yee claimed that when the lake's water level was elevated to more than 799 feet (which Yee claims was the level of the lake that was maintained from the time that he purchased his property in 1986 until 1993), it encroached upon, and damaged, his property. Yee sought relief in the form of monetary damages and additionally requested that the trial court issue an injunction requiring the defendant property owners to reduce the lake's level to a crest elevation of 799 feet above sea level in accordance with the original 1970 dam permit given by Department of Natural Resources to allow the formation of the lake.

The matter was set for trial in January 1999.[3] However, prior to the commencement of trial, issues concerning the trial court's authority to establish a legal

---

*denied*, 472 Mich. 939 (2005) and *cert. denied*, ___ U.S. ___, 126 S.Ct. 750 (2005).

[2] Although Yee filed his complaint in Shiawassee County Circuit Court, after the judge assigned to the case recused himself from hearing the matter, the State Court Administrative Office assigned the case to Judge Judith Fullerton in the Genesee County Circuit Court.

[3] The trial court had bifurcated the lake level and damages issues, and the damages questions was submitted to mediation. All parties accepted the mediation evaluation which awarded plaintiff monetary damages for damage to his property. Thus, only the issue of whether the lake was being maintained at an inappropriate level such that Plaintiff might be entitled to the injunctive relief he requested was to be tried.

lake level were raised in a brief filed by the Michigan Department of Environmental Quality, which was allowed to intervene in the action. The MDEQ argued that the exclusive method for establishing a legal lake level is through the procedures outlined in the Natural Resources and Environmental Protection Act, which require that any action to establish a legal level for an inland lake be initiated by the county board of commissioners. Therefore, the Department argued that the trial court had no authority to act in the manner requested by Plaintiff Yee.

Several of the defendants adopted the arguments of the MDEQ in motions for summary disposition filed on January 19, 1999. On January 20, 1999, the parties assembled for trial on the lake level issue. Before trial, however, the trial court heard argument on the issues raised by the MDEQ in its trial brief. After hearing the arguments of all parties, the court determined that summary disposition of Plaintiff's claims was appropriate. Accordingly, an order granting summary disposition was entered in favor of all defendants and, on February 3, 1999, Yee's complaint was dismissed.

Several days after dismissal of Plaintiff's suit, the riparian property owners on Bambi Lake petitioned the Shiawassee County Board of Commissioners to establish a normal level for the lake pursuant to the NREPA. After the completion of an engineering study commissioned by the Board in order to determine the historic water surface elevation of the lake, the Board directed the county attorney to commence an action in Shiawassee County Circuit Court to set the water surface elevation level of the lake at 800.67 feet. The county attorney initiated such action on June 13, 2000.

Meanwhile, on August 6, 1999, Yee filed a second action naming the Shiawassee County Board of Commissioners, the Shiawassee County Drain Commissioner, and George Braidwood, Jr., as defendants. In this action, Yee sought to enjoin the county commissioners from setting a legal water level for Bambi Lake, contending that the 1970 dam permit set the legal lake level at 799 feet above sea level. (He also sought a further award of damages as well as an injunction "to abate the flooding" of his property.) Then, three months later, on November 22, 1999, Yee filed yet a third action relating to the water level of Bambi Lake. Although filed as a "quiet title" action to determine interests in land, the relief sought by Yee was, in essence, the same as that sought in his two previous actions, i.e., an order declaring that the "lawful normal" elevation of Bambi Lake, as established by the 1970 dam permit, was 799 feet above sea level, and that no county agency had authority to alter that level.[4]

The defendants in the second and third actions moved for summary disposition under various theories, including res judicata stemming from the January 20, 1999 ruling in the first of Yee's actions. The court agreed with the defendants and dismissed Plaintiff's complaints. Plaintiff appealed the decisions rendered in all three cases.

The three cases were consolidated on appeal, and on May 21, 2002, the Michigan Court of Appeals entered its decision affirming all three rulings. *See Yee v. Shiawassee*

---

[4] These cases were assigned to the same Shiawassee County Circuit Judge who was assigned Yee's first action. The judge again recused himself from both of these cases and they were, therefore, transferred to Genesee County Circuit Judge Fullerton who decided Yee's first case.

*County Bd. of Commissioners*, 251 Mich. App. 379 (2002) ("*Yee I* "). Plaintiff subsequently applied for leave to appeal to the Michigan Supreme Court. Leave to appeal was denied on February 23, 2003. *See Yee v. Shiawassee County Bd. of Commissioners*, 468 Mich. 852 (2003). Yee then filed a petition for a writ of *certiorari* to the United States Supreme Court which was denied on November 10, 2003. *See Yee v. Shiawassee County Bd. of Comm'rs*, 540 U.S. 1004 (2003).

Meanwhile, in June 2002, the Shiawassee County Board of Commissioners' action to establish the normal level of Bambi Lake at 800.67 feet was commenced in Shiawassee County Circuit Court. Mr. Yee was permitted to intervene in the action. After a five-day bench, the trial court established the level of Bambi Lake consistent with the county board's petition. Yee also appealed this decision.

On September 24, 2004, the Michigan Court of Appeals affirmed the circuit court's decision. *See In re Lake Level for Bambi Lake,* 2004 WL 2169037 (Mich. App. 2004) (unpublished decision; text available on WESTLAW). Yee then applied for leave to appeal to the Michigan Supreme Court. Leave to appeal was denied on June 28, 2005. *See In re Lake Level for Bambi Lake*, 472 Mich. 936 (2005). Yee subsequently petitioned for a writ of *certiorari* to the United States Supreme Court. The Supreme Court denied *certiorari* on January 23, 2006. *See Yee v. Shiawassee County, Michigan*, 126 S.Ct. 1188 (2006).

On November 16, 2006, Plaintiff filed his 160-plus-page Complaint in the instant action. At the heart of Plaintiff's Complaint are his arguments that Judge Judith

Fullerton, the Genesee County Circuit Judge on all three of the cases filed by Yee, wrongly decided that the 1970 dam permit did not establish a legal water level for Bambi Lake, wrongly decided that his monetary judgment was limited to his mediation award, made various procedural errors in deciding the matter via summary disposition, and that the Attorney General Defendants, County Prosecutor Defendants, the Mediator Defendants, and all of the other Attorney Defendants conspired with the Judge to make her rulings thereby depriving Yee of his due process, equal protection and property rights. As indicated, the Court has already dismissed Judge Fullerton, all of the other Judicial Defendants, the Attorney General Defendants, the County Prosecutor Defendants and the Mediator Defendants on the basis of absolute judicial and quasi-judicial immunity. The Court's concern in this Opinion is the "Attorney Defendants." The discussion that follows, however, would also apply to the defendants who have already been dismissed on immunity grounds.

### III.  DISCUSSION

A.     PLAINTIFF'S CLAIMS ARE BARRED BY THE *ROOKER-FELDMAN* DOCTRINE

It is axiomatic that federal courts lack appellate jurisdiction over state court judgments in connection with modifying them or vacating them. *Rooker v. Fidelity Trust Co.*, 263 U.S. 412, 44 S.Ct. 149 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303 (1983). The Supreme Court's decisions in these two cases, taken together, stand for the proposition that the inferior federal courts lack the

authority to perform, in effect, what would be an appellate review of state court decisions. This rule has become known as the *Rooker-Feldman* doctrine.

In *Rooker*, the plaintiffs brought an action in a federal district court claiming that an Indiana state statute violated their federal constitutional rights, even though the issues which the plaintiffs raised had been decided by an Indiana Circuit Court and affirmed by the Indiana Supreme Court. In affirming the federal district court's dismissal of the action based on lack of jurisdiction, the United States Supreme Court stated that the state courts had jurisdiction to determine the constitutional validity of the state's statutes and, until reversed or modified by a state court, the state judgment would be an effective and conclusive adjudication, even before an inferior federal court. 263 U.S. at 415. In particular, the Court held that the inferior federal courts lacked jurisdiction to entertain a proceeding to reverse or modify a state court judgment since it would be an exercise of appellate jurisdiction and the jurisdiction possessed by the federal district court is strictly original. *Id.* at 414-17.

In *Feldman*, the plaintiff submitted to the District of Columbia Court of Appeals a petition for admission to the bar of the District of Columbia after he had been refused the right to take the bar examination because he had not graduated from an approved law school, as required by the District of Columbia rules. After the District of Columbia Court of Appeals denied the plaintiff's petition, he brought an action in a federal district court alleging that he had a right to take the bar exam pursuant to the Fifth Amendment, and that, denying him this right, due to his law school's lack of accreditation, was a

8

violation of the Fifth Amendment and the Sherman Act.  In finding that the federal district court had no jurisdiction over this matter, the U.S. Supreme Court held that plaintiffs seeking review of state court decisions must first exhaust the appellate review available to them at the state court level after which their only recourse is to appeal to the United States Supreme Court.  *Feldman*, 460 U.S. at 486.

The Supreme Court synthesized this rule in *Exxon Mobil Corporation v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S.Ct. 1517 (2005), explaining that the *Rooker-Feldman* doctrine applies to

> cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

544 U.S. at 284, 125 S.Ct. at 1521.

Thus, where the source of a plaintiff's injury is a state court decision, *Rooker-Feldman* bars a federal district court from hearing the plaintiff's claims.  *See McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006); *see also Howard v. Whitbeck*, 2007 WL 29779 (6th Cir., Jan. 5, 2007) (unpublished decision; text available on WESTLAW).  It is only where the plaintiff's complaint stands independent of the state court judgment that *Rooker-Feldman* will not apply.  *McCormick, supra* 451 F.3d at 393-394.  However, merely phrasing a complaint as seeking redress for an injury caused by the *defendants' actions* (as opposed to injury caused by a state court decision) is not enough; if the defendants' actions are the product of the state court judgment, then the plaintiff's challenge of those actions is in fact a challenge of the judgment itself, and, therefore, is

barred under *Rooker-Feldman*. *See id*., 451 F.3d at 394. *See also Fieger v. Ferry*, ___ F.3d ___, 2006 WL 3775775 (6th Cir., Dec. 26, 2006) (holding that Fieger's federal complaint was barred by the *Rooker-Feldman* doctrine to the extent that he sought a declaration that the Defendant Justices violated his constitutional rights when they refused to recuse themselves from his prior cases because such a declaration would require the federal court to review the Justices' past recusal decisions); *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87-88 (2nd Cir. 2005) (finding that the plaintiffs' challenge to a county board of election's refusal to tally certain absentee ballots was in fact a challenge of the state court judgment which found that the absentee ballots were invalid.)

As indicated above, Plaintiff alleges the Attorney Defendants, the Attorney General Defendants, the County Prosecutor Defendants, the Mediator Defendants, and the MDNR-MDEQ conspired with Genesee County Circuit Judge Judith Fullerton to rule against him and violate his due process, equal protection and property rights by deciding that the 1970 dam permit did not establish a legal water level for Bambi Lake, deciding that his monetary judgment was limited to his mediation award, and by making various procedural errors in deciding the matter via summary disposition. *See* Plaintiff's First Amended Complaint, Count 8, ¶¶ 133-223. Therefore, to find for the Plaintiff necessarily would require this Court to review Judge Fullerton's various decisions and find that she wrongly decided that the 1970 dam permit did not establish a legal water level for Bambi Lake, that she erred in deciding that his monetary judgment was limited to his mediation

award, and that she further committed reversable error in deciding these matters via summary disposition. As *Rooker* and *Feldman* and their progeny make clear, this Court is without jurisdiction to do so.

B.  PLAINTIFF IS COLLATERALLY ESTOPPED FROM RAISING THE CLAIMS HE ALLEGES AGAINST THE ATTORNEY DEFENDANTS

To the extent that Plaintiff's claims against the Attorney Defendants are not barred by *Rooker-Feldman,* Plaintiff is collaterally estopped from raising these claims.

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give state court judgments the same preclusive effect that the state would afford such judgments. *Exxon Mobil*, *supra*, 125 S.Ct. at 1527 (quoting *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986)); *see also Peterson Novelties v. City of Berkeley*, 305 F.3d 386, 394 (6th Cir. 2002). In Michigan, collateral estoppel precludes relitigation of issues or facts that have already been decided in a prior litigation. *Wilcox v. Sealy*, 132 Mich. App. 38, 46 (1984). "Where issues of fact or law have been finally determined by a court of competent jurisdiction in one legal action which are essential to the maintenance of another legal action, it is universally held that the second action must fail." *Jones v. Chambers*, 353 Mich. 674, 680 (1958).

The goal of collateral estoppel is to balance the right and interests of a party to be heard and the public's interest in discouraging repetitive litigation. *See People v. Gates*, 434 Mich. 146, 154 (1990); *Howell v. Vito's Trucking Co.*, 386 Mich. 37, 48 (1971). As the Michigan Court of Appeals explained in *Minicuri v. Scientific Data Mgmt., Inc.*, 243

11

Mich. App. 28 (2000), collateral estoppel and the related preclusion doctrine of *res judicata* "serve an important function [by] conserv[ing] judicial resources" and giving finality to disputes:

> The preclusion doctrines serve an important function in resolving disputes by imposing a state of finality to litigation where the same parties have previously had a full and fair opportunity to adjudicate their claims. By putting an end to litigation, the preclusion doctrines eliminate costly repetition, conserve judicial resources, and ease fears of prolonged litigation.

243 Mich. App. at 33.

> Michigan has three requirements for collateral estoppel or "issue preclusion":
>
> (1) a question of fact essential to the judgment [in the second action] must have been actually litigated and determined by a valid and final judgment [in the first action]; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel.

*McCormick v. Braverman, supra*, 451 F.3d at 397 (quoting *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 677 N.W.2d 843, 845-46 (2004)) (citation omitted.) With respect to the third requirement, mutuality is not required for defensive use of collateral estoppel against a prior plaintiff. *McCormick, supra; Monat, supra*, 677 N.W.2d at 850-51.

Here, Plaintiff challenges the propriety and validity of various state court decisions and orders. But the issue of whether the decisions were correct and the orders valid and proper has already been fully litigated in the Michigan state courts. Plaintiff has exhausted his appeal rights in the Michigan courts and was twice denied a writ of certiorari by the United States Supreme Court. Plaintiff's claims have been heard and decided on their merits. Accordingly, Plaintiff is collaterally estopped from attacking the

state court rulings here in federal court.[5]

C. PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Even if Plaintiff is not precluded from pursuing his claims by the *Rooker-Feldman* doctrine or the collateral estoppel doctrine, his claims against the Attorney Defendants are time-barred.

As previously indicated, Plaintiff's claim is that the Attorney Defendants conspired with the Attorney General Defendants, the County Prosecutor Defendants, the Mediator Defendants, and Genesee County Circuit Judge Judith Fullerton to cause him to suffer damages to his property, to deprive him of his civil rights and to intentionally cause him emotional distress. As theories of recovery, Plaintiff asserts claims under 28 U.S.C. § 1983 and the Michigan Elliott-Larsen Civil Rights Act; state common law claims of conspiracy and intentional infliction of emotional distress; and civil RICO claims. Construing Plaintiff's First Amended Complaint as broadly as possible, inasmuch as Plaintiff claims that the Attorney Defendants conspired with Judge Fullerton causing her to reach the various decisions she did, Plaintiff's claims against the Attorney Defendants would have accrued at the very latest by the time that Judge Fullerton decided the last of the Genesee County Circuit Court actions on April 13, 2000.[6]

---

[5] Collateral estoppel also bars Plaintiff's claims regarding his divorce, including the state court's rulings regarding parenting time, child custody, spousal support and property rights.

[6] Judge Fullerton was not involved in the case filed by the Shiawassee County Board of Commissioners in June 2000 to set a legal water level for Bambi Lake. That

The appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims. M.C.L. § 600.5805(10). *See Wolfe v. Perry,* 412 F.3d 707, 714 (6th Cir. 2005); *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir.), *cert. denied*, 125 S.Ct. 500 (2004). That same three-year statute of limitations applies to claims of intentional infliction of emotional distress, *see Nelson v. Ho*, 222 Mich.App. 74, 564 N.W.2d 482, 487 (1997); Elliott-Larsen Civil Rights Act claims, *see Timko v. Oakwood Custom Coating, Inc*., 244 Mich.App. 234, 625 N.W.2d 101, 104 (2001); and civil conspiracy claims, *see Mayes v. Three Rivers Rubber Corp*., 135 Mich. App. 42, 352 N.W.2d 339 (1984). A civil RICO action has a four-year limitation period. *Rotella v. Wood*, 528 U.S. 549, 120 S.Ct. 1075 (2000); *Agency Holding Corp. v. Malley-Duff & Assocs., Inc*., 483 U.S. 143, 156, 107 S.Ct. 2759 (1987). Under all of these theories, the limitations period accrues when a plaintiff knew or should have known of an injury. *See e.g., Rotella*, 528 U.S. at 554-55, 120 S.Ct. 1075.

To the extent that Yee is attempting to make out a claim based on the "conspiracy" of the Attorney Defendants and Judge Fullerton, Yee knew or should have known of his injury as of April 13, 2000 when the last of the cases was decided in the Genesee County

---

case was assigned to, and tried before, Shiawassee County Circuit Judge Randy L. Tahvonen.

14

Circuit Court.[7]  Therefore, under the foregoing authorities, the period of limitations for Plaintiffs Section 1983, Elliott-Larsen, intentional infliction of emotional distress and civil conspiracy claims would have expired as of April 13, 2003 and for his civil RICO claims in April 13, 2004.  Plaintiff, however, did not file the instant action until November 16, 2006, i.e., more than two years after the longest period of limitations had expired.  Plaintiff's Complaint against the Attorney Defendants, therefore, is time-barred.

## CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that the Attorney Defendants' Motions to Dismiss [Document Nos. 44, 46, 54, 59, 81, 97 and 144] are GRANTED.[8]  Accordingly,

---

[7] Yee does not -- and surely cannot realistically -- claim that the Attorney Defendants' continued with their conspiracy with Judge Fullerton while the case proceeded on appeal when Judge Fullerton no longer had any involvement with the case. Therefore, the fact that the appeals progressed after June 2000 does not toll the accrual of Yee's claims of deprivation of constitutional rights, discrimination, intentional infliction of emotional distress, civil conspiracy and RICO violations against the Attorney Defendants.  The claims against these defendants accrued no later than when the cases were decided by Judge Fullerton.

[8] With respect to the Motion filed by Michael J. Guss and his law firm, Harvey Kruse, P.C. [Document No. 44], although the Court agrees that Plaintiff's claims against these attorney defendants should be dismissed for the reasons stated in this Opinion, the Court rejects the motion made by these two Defendants insofar as they argue that, because they were at all times acting as counsel for their client (who was a defendant in Yee's state court action), they are cloaked with absolute immunity.   The rule of absolute immunity for attorneys applies only to defamation actions. *See Hartung v. Shaw*, 130 Mich. 177 (1902); *Sanders v. Leeson Air Conditioning Corp.*, 362 Mich. 692 (1961); *Various Markets v. Chase Manhattan Bank, N.A.*, 908 F. Supp. 459, 465 (E.D., Mich. 1995); *see also Kaefle v. Lerner, Sampson & Rothfuss, L.P.A.*, 161 Fed. Appx. 487, 491 (6th Cir. 2005) ("Although it is true, as the district court noted, that each of the plaintiffs'

15

IT IS FURTHER ORDERED that Plaintiff's claims against Attorney Defendants Michael J. Guss and his law firm, Harvey Kruse, P.C.; J. Steven Johnston and Eric S. Goldstein, and their law firm, Bigler, Berry, Johnston, Sztykiel & Hunt, P.C.; Edward B. Davison and his law firm, Gault Davison, P.C.; Thomas A. Connolly and Thomas A. Connolly, P.C.; Marcia Howe, Patrick A. Aseltyne and Jason D. Kolkema, and their law firm, Johnson, Rosati, LaBarge, Aseltyne & Field, P.C.; David Carbajal and Alan R. Sullivan are DISMISSED, WITH PREJUDICE.

        s/Gerald E. Rosen
        Gerald E. Rosen
        United States District Judge

Dated: January 23, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 23, 2007, by electronic and/or ordinary mail.

        s/LaShawn R. Saulsberry
        Case Manager

---

claims against the attorney defendants arises out of actions taken pursuant to their representative capacity, the rule of absolute immunity applies only to defamation suits.") The rule does not apply to any other kinds of claims.